UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD RUTHERFORD,<br><br>             Plaintiff,<br><br>   v.<br><br>CHASE BANK, N.A., et al.,<br><br>             Defendants. | CASE NO. 2:13-cv-01175-MJP<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant JP Morgan Chase Bank N.A's motion for summary judgment. (Dkt. No. 18.) Defendant Northwest Trustee Services, Inc. ("NWTS"), joins in the motion. (Dkt. No. 23.) Having reviewed the moving papers, Plaintiff's responses, reply, and all related papers, the Court GRANTS the motions. (Dkt. Nos. 18, 23.)

**Background**

Plaintiff Richard Rutherford refinanced his Sammamish, Wash., home in 2007, with Washington Mutual Bank, FA ("WaMu"). (Dkt. No. 20-1, Deposition of Richard Rutherford, hereinafter referred to as "Rutherford Dep." at Ex. 1.) In doing so, he executed a deed of trust, granting WaMu a security interest in his home. (Id. at Ex. 2.) JP Morgan Chase, the Defendant

in this case, acquired all loans and loan commitments of WaMu from the Federal Deposit Insurance Corporation, acting as a Receiver for Washington Mutual. (Dkt. No. 21.)[1]

Within 13 months, Rutherford defaulted on the loan. (Rutherford Dep. at 31.) In an effort to cure the default, Rutherford began talking with Defendant about a loan modification in December 2008. (Id. at 34.) Rutherford recalls the terms he worked out with Defendant were as follows—a 1% interest only payment, gradually increasing to 5% interest only. (Id. at 35.) If the loan was modified, Rutherford's principal balance was $1,030,000.00. (Id. at 36.) Rutherford would repay this amount, plus interests, over 420 months. (Id.) Although he felt like the parties had worked out an agreement, he knew it would not merely be a verbal one, but it needed to be in writing. (Id. at 37.)

On January 2, 2009, Defendant sent Rutherford a proposed Loan Modification Agreement (the "January loan modification"). (Dkt. No. 19-1.) The January loan modification stated:

> Thank you for your continued interest in our Homeownership Preservation Program....The Agreement was prepared consisted with the terms you discussed with a loan workout specialist. The Agreement will not be binding or effective until it has been signed by both you and the lender in compliance with the instructions and conditions in this letter.

(Id. at 2.) The January loan modification also contained a "Notice of No Oral Agreements." (Id. at 5.) It advised Rutherford:

> The written loan agreement represents the final agreement between the parties and may not be contracted by evidence of prior, contemporaneous, or subsequent oral agreements of the Parties. There are no unwritten oral agreements between the parties.

---

[1] The Court refers to WaMu and JP Morgan Chase as "Defendant."
ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 2

1  (Id.) According to Rutherford, the January loan modification had the same terms he discussed

2  with Defendant over the phone.  The January loan modification required Rutherford to send two

3  signed and notarized copies of the agreement to Defendant by January 12, 2009.  (Rutherford

4  Dep. at ex. 6.)  He was also required to send a certified or cashier's check for $1000 by January

5  12, 2009.  (Id.)

6  Rutherford claims he timely sent these documents back to Defendant, as evidenced by a

7  DHL courier service slip from January 5, 2009.  (Dkt. No. 30-1.)  Rutherford has never produced

8  a signed copy of the January loan modification agreement.  (Dkt. No. 19 at 3.)  Likewise,

9  Defendant's business records do not contain or reflect ever having received from Rutherford a

10 signed loan modification agreement during the period from January 2, 2009 to March 8, 2009.

11 (Id.)  Rutherford believes he also sent a check to Defendant.  (Dkt. No. 30 at 3.)  He offers a

12 copy of his January 2009 personal bank records, showing a personal check for $1000 cleared in

13 January 12, 2009.  (Dkt. No. 30-1 at 2.)  Rutherford has been unable to produce a copy of the

14 check or otherwise confirm who the payee was.  Yet he also recalls the first check he sent was

15 returned to him.  (Rutherford Dep. at 40, 57-58.)

16 In subsequent communications, Rutherford learned that he needed to sign additional

17 documents and/or send a different or replacement check.  (Id. at 63.)  He explains, "I felt they

18 didn't accept something to do with what I sent in, but whether they were not accepting my loan

19 modification, in terms of their acceptance of the contract, no, I don't believe that." (Id. at 76.)

20 Defendant sent Rutherford a second loan modification package in late January 2009.  (Id.

21 at Ex. 10.)  On February 25, 2009, Defendant notified Rutherford that it had cancelled his request

22 for a loan modification workout due to his failure to timely return the loan modification

23 documents.  (Dkt. No. 19 at 3.)  On March 6, 2009, Rutherford signed a loan modification

24

package. (Rutherford Dep. at 75.) He explains his signing of this second agreement as "Well, they had, I mean, it's clear to me they had new requirements. They had me notarize this, for one.[2] They had new requirements I know because they had me redo it, so I know there was something not accepted with the first loan modification; whether it was the check, whether it was just that they needed a notary, now I'm seeing they have it notarized." (Id. at 75.) Defendant received Rutherford's signed March 6, 2006 loan modification documents and a check on March 9, 2009. (Dkt. No. 19 at 3.) The check was returned to Rutherford. (Id.)

Rutherford wrote to Defendant in mid to late March 2009 to note: "My previous acceptance of a loan modification agreement was subsequently rejected because I did not get documentation in by the requested date." (Rutherford Dep. at Ex 13.)

Defendant commenced non-judicial foreclosure proceedings on Rutherford's property. Plaintiff filed a motion for a preliminary injunction. (Dkt. No. 5-6.) Defendant has cancelled the trustee's sale and none has occurred. (Rutherford Dep. at 125.)

Rutherford sued JP Morgan Chase and Northwest Trustee Services ("NWTS") alleging claims for breach of contract, promissory estoppel, accounting, violations of the Consumer Protection Act, and violations of the Deed of Trust Act. (Dkt. No. 1-1.) Defendants removed the case to this Court. (Dkt. No. 1.) The central tenet of these claims is that the loan modification terms are enforceable. Defendant Chase moves for summary judgment. (Dkt. No. 18.) NWTS joins in the motion. (Dkt. No. 23.)

**Discussion**

---

[2] The Court notes the notary requirement appears in the January 2, 2009 cover letter to the loan modification. (Rutherford Dep. at Ex. 6.)

I.      **Legal Standard**

Federal Rule 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether a factual dispute requiring trial exists, the court must view the record in the light most favorable to the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). All material facts alleged by the nonmoving party are assumed to be true, and all inferences must be drawn in that party's favor. Davis v. Team Elec. Co., 520 F.3d 1080, 1088 (9th Cir. 2008).

A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

II.     **Breach of Contract Claim**

A contract requires offer, acceptance and consideration. See Yakima County Fire Protection Dist. No. 12 (West Valley) v. Yakima, 122 Wn.2d 371, 389–90 (1993). A breach of contract is actionable if "the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." Northwest Indep. Forest Mfrs. v. Dep't of Labor & Indus., 78 Wn. App. 707, 712 (1995). Rutherford asserts several breach of contract theories regarding Defendant not "honoring" the loan modification terms. (Dkt. No. 1-1 at 5-8.)

The Parties' legal and factual dispute comes down to acceptance. To form a contract, the parties must objectively manifest their mutual assent to the definite terms of an offer. Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn.2d 171, 177–78 (2004). Whether there was mutual

assent is a question of fact.  Keystone, 152 Wn.2d at 178 n. 10.  An enforceable contract is distinguished from an unenforceable agreement to agree, i.e., "'an agreement to do something which requires a further meeting of the minds of the parties and without which [the contract] would not be complete.'"  Keystone, 152 Wn.2d at 175–76 (quoting Sandeman v. Sayres, 50 Wn.2d 539, 541–42 (1957)).

There is no genuine issue of material fact as to the required element of Defendant's acceptance.  Rutherford fails to offer evidence that Defendant signed the January loan modification, as required for it to be binding and effective: "[t]he Agreement will not be binding or effective until it has been signed by both you and the lender in compliance with the instructions and conditions in this letter."  (Dkt. No. 19-1.)  Such a requirement is consistent with Washington law and the statute of frauds.  RCW 19.36.010.  Moreover, Rutherford understood this requirement when he read the January loan modification documents.  (Rutherford Dep. at 52.)

Nor does the Court find any genuine issue of material fact that his March 6, 2009 acceptance of the agreement created a binding contract.  Defendant had already advised Plaintiff that the proposed modification was withdrawn.  And, even if that were not the case, Defendant never signed the agreement, a prerequisite to it being binding and enforceable.

Rutherford makes much of a $1000 check from his personal account he claims to have sent Defendant in January 2009 as proof Defendant accepted the January loan modification.  He argues Defendant accepted this payment, as evidenced by a ledger from Defendant showing a "suspense balance" of $"1000-".  Rutherford presents no testimony regarding how the ledger defines such balances—if it is indeed a credit— or when this entry was made onto his account.  Instead, he offers a statement from the bank account he shared in 2009 with his wife.  The

1  statement shows a $1000 check cleared the account on January 12, 2009.  (Dkt. No. 30 at 3.)  He

2  surmises, "given the timing of the payment and the context of how I handled by other financial

3  obligations this check could only represent the check I included in the packet I mailed to

4  Washington Mutual on January 5, 2009."  (Id. at 3-4.)

5        Rutherford's theory is flawed.  First, under Washington law, acceptance of consideration

6  alone is insufficient to overcome the statute of frauds.  Berg v. Ting, 68 Wn. App. 721, 728

7  (1993), rev'd on other grounds, 125 Wn.2d 544, 556–62 (1995).  Second, even if Rutherford

8  could show Defendant accepted a personal check in 2009, it had a legal right to do so under the

9  Parties first loan agreement.  (Dkt. No. 20-2 at 8.)  Third, if the ledger from his personal account

10  does indeed evidence a $1000 check from Rutherford to Defendant, he failed to send the check

11  in the manner required by the loan modification documents, which specified a cashiers or

12  certified check, not a personal one.  Nw Properties Agency, Inc., v. McGhee, 1 Wn. App. 305,

13  312 (1969) (where manner of acceptance is specified, no contract formation if it is not followed.)

14        Corvello v. Wells Fargo Bank, NA, 728 F.3d 878, 884 (9th Cir. 2013), does not compel a

15  different result.  The Ninth Circuit in Corvello address the special circumstances of the Trial

16  Period Plan ("TPP") under the federal government's Home Affordable Modification Program

17  and held that where "borrowers allege ... that they have fulfilled all of their obligations under the

18  TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have valid

19  claims for breach of the TPP agreement."  Id.  However, if "a borrower does not qualify for the

20  HAMP program, the servicer must not only alert the borrower, but must consider alternatives."

21  Id. at 881.  Contrary to Rutherford's assertions, Corvello has no application to the facts of this

22  case.  Rutherford has no TPP agreement with Defendant nor had he fulfilled all of the obligations

23

24

1  of such an agreement.  Additionally, the undisputed record shows Defendant did offer him a
2  permanent loan modification, unlike the bank in Corvello.
3      The Court finds there are no genuine issues of material fact on Plaintiffs' breach of
4  contract claims and GRANTS summary judgment to Defendant.
5      **III.    Promissory Estoppel**
6      Promissory estoppel requires: "(1) A promise which (2) the promisor should reasonably
7  expect to cause the promisee to change his position and (3) which does cause the promisee to
8  change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice
9  can be avoided only by enforcement of the promise." Corbit v. J.I. Case Co., 70 Wn.2d 522, 539
10 (1967).  Rutherford claims the offer of a loan modification in January 2009 constitutes a promise
11 on which he relied to his detriment. (Dkt. No. 1-1 at 6.)
12     Rutherford's attempt to invoke the equitable doctrine of promissory estoppel fails on a
13 number of grounds.  First, In Washington, the statute of frauds applies to promissory estoppel
14 claims.  Greaves v. Med. Imaging Sys., Inc., 124 Wn.2d 389 (1994) (rejecting Restatement
15 (Second) of Contracts § 139 (1981), which would allow enforcement of an oral promise despite
16 the statute of frauds if reliance is foreseeable and injustice can be avoided only by enforcement).
17 Because the alleged promise of refinancing Rutherford's mortgage could not be performed
18 within a year, any promise needed to be in writing and signed by Rutherford and Defendant.
19     Rutherford also fails to show any genuine issue of material fact as to reliance.  He
20 testified to knowing that the oral modification worked out with Defendant would need to be in
21 writing and that Defendant would have to sign it to be finalized.  He also knew under the loan
22 modification that he did not have an oral agreement with Defendant. (Rutherford Dep. at 63.)
23 Additionally, the record shows he did not rely on Defendant's alleged promise.  Rutherford did
24

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 8

not send his first modified mortgage payment in February 2009.  (Id. at 63.)  Instead, he signed a later loan modification agreement in March 2009, knowing Defendant rejected the first.  (Id. at 90.)  Rutherford acknowledged this fact in a letter send to Defendant: "My previous acceptance of a loan modification agreement was subsequently rejected because I did not get documentation in by the requested date."  (Id. at Ex 13.)  More than a year later in June 2010, Rutherford again wrote Defendant requesting help and noting, "Our home is not worth what we currently owe and we have been told that a loan modification was not an option for us."  (Id. at Ex. 15.)  On this record, the Court cannot find any triable factual issues for a jury on the element of reliance.

The Court GRANTS summary judgment to Defendant on this claim.

**IV.    Consumer Protection Act**

To succeed on his CPA, Rutherford must prove: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) causes injury to the Plaintiff's business or property; and (5) the injury is causally linked to the unfair or deceptive act or practice.  Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986).  An unfair or deceptive practice is one that "has the capacity to deceive a substantial portion of the public."  Id. at 785.  Failure to satisfy even one element is fatal to a CPA claim.  Id. at 793.

Rutherford's CPA claim relates to his breach of contract claims.  He argues Defendant "engaged in an unfair practice when it offered to modify Mr. Rutherford's loan but then refused to honor the modification when Mr. Rutherford accepted the modification."  (Dkt. No. 1-1 at 8.)  Plaintiff is misguided in his notion that Defendant's withdrawal of a loan modification when Plaintiff failed to conform to its terms constitutes an unfair and deceptive trade practice.  Mickelson v. Chase Home Finance LLC, 2012 WL 1301251, *6 (W.D.Wash. April 16, 2012).

Further, any offer by Defendant was conditional.  Rutherford's own letters explain he failed to timely submit documents to Defendant to meet those conditions.  The Court DISMISSES this claim, finding no genuine issue of material fact as to the first element of a CPA claim.

## V. Rutherford's Other Claims

Rutherford sues for accounting and breach of contract on the theory the modification loan terms are effective and Defendant has failed to properly and accurately calculate the arrears owned on the loan and the payoff amount. (Dkt. No. 1-1 at 6-7.  This argument and the evidence offered by Plaintiff, in the form of spreadsheets he prepared himself, depend on the enforceability of the loan modification terms. (Dkt. No. 30 at 8.) As outlined above, the modification terms are unenforceable because the Parties never had a meeting of the minds.  The Court finds no genuine issue of material fact on these claims and DISMISSES them accordingly.

As to claims 6 and 7, Rutherford withdraws them in his response to the motion for summary judgment. (Dkt. No. 32 at 20-21.)

## VI. Claims against NWTS

Plaintiff abandons his claims against NWTS, except to make Defendant NWTS bound by orders with respect to Chase and its nonjudicial foreclosure sale. (Dkt. No. 28.) Consequently, the Court DISMISSES all claims against NWTS.

## Conclusion

The Court GRANTS Defendant Chase and NWTS's motions for summary judgment, finding there are no genuine issues of material fact on Plaintiff's breach of contract claims regarding the enforceability of the proposed loan modification.  As a consequence, Plaintiff's other related claims for accounting and violations of the Consumer Protection Act also fail.  The

1 | Court GRANTS the motions as to all claims and DISMISSES this case with prejudice. The clerk
2 | is ordered to provide copies of this order to all counsel.

3   Dated this <u>11th</u> day of September, 2014.

             *Marsha J. Pechman*
             Marsha J. Pechman
             Chief United States District Judge